UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROSALYN NEWDOW, KENNETH BRONSTEIN, :
BENJAMIN DREIDEL, NEIL GRAHAM, JULIE :
WOODWARD, JAN AND PAT DOE, DOE-CHILD-1 :
AND DOE-CHILD2, ALEX AND DREW ROE, :
ROE-CHILD-1, ROE-CHILD2 AND ROE-CHILD3 :
VAL AND JADE COE, COE-CHILD-1 AND COE- :
CHILD-2, NEW YORK CITY ATHEISTS, and :
FREEDOM FROM RELIGION FOUNDATION :
                                                                              :
                       Plaintiffs,                                         :
                                                                              :       13 CV 741 (HB)
       - against -                                                     :
                                                                              :       **OPINION & ORDER**
                                                                              :
UNITED STATES OF AMERICA, JACOB J. LEW, :
SECRETARY OF THE TREASURY, RICHARD A. :
PETERSON, ACTING DIRECTOR, UNITED :
STATES MINT, and LARRY R. FELIX, DIRECTOR, :
BUREAU OF ENGRAVING AND PRINTING, :
                                                                              :
                       Defendants,                                     :
                                                                              :
-------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiffs are eleven individuals who are Atheists and Secular Humanists, and two associations, New York City Atheists and the Freedom from Religion Foundation. Plaintiffs claim that Defendants' issuance of United States currency bearing the words "In God We Trust" violates the Establishment Clause, the Free Exercise Clause and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ("RFRA"). The above-captioned Defendants bring this motion to dismiss the complaint.

For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED, and the case is DISMISSED.[1]

---

[1] The Court need not reach Plaintiffs' Motion for Summary Judgment or Defendants' arguments that mandamus would not be proper in this action.

1

## I.  BACKGROUND

Atheist and Secular Humanist individual Plaintiffs are numismatics, a teacher, parents and their minor children, and others who allege that they suffer harm because of the appearance of the words "In God We Trust" on U.S. currency. (Am. Compl. ¶¶ 7-17.) Plaintiffs New York City Atheists ("NYC Atheists") and Freedom from Religion Foundation ("FFRF") are associations committed to the values of Atheism and the separation of church and state.  They allege that their members suffer the same harm as the individual Plaintiffs. (*Id.* ¶¶ 18, 19.) Plaintiffs challenge statutory provisions that require the inscription of "In God We Trust" on all coins and printed currency, 31 U.S.C. §§ 5112(d)(1), 5114(b), which were enacted in 1955. In 1956, Congress established "In God We Trust" (hereinafter "motto") as the national motto of the United States. 36 U.S.C. § 302.  Congress reaffirmed this language in 2002, with detailed findings. *See* Pub. L. No. 107-293, 116 Stat. 2057 (2002). Plaintiffs allege that the inclusion of the motto on currency violates the Establishment Clause and substantially burdens their practice of Atheism and Secular Humanism, in violation of the Free Exercise Clause and RFRA. (Am. Compl. ¶¶ 379-511.)

Plaintiffs ask the Court to declare that the statutes requiring that the motto appear on United States currency violate the Establishment Clause and the Free Exercise Clause of the First Amendment, as well as RFRA. (Am. Compl. at 78.) In addition, Plaintiffs seek an injunction preventing defendants from issuing currency containing the motto. (*Id.*)

## II.  LEGAL STANDARD

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss on this ground, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION[2]

### A. Establishment Clause

The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. In *Lemon v. Kurtzman*, the Supreme Court set out three tests to determine whether the Establishment Clause has been violated: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" 403 U.S. 602, 612-13 (1971) (citations omitted).  Although the *Lemon* test has faced criticism, the Second Circuit has instructed district courts to apply it until it is reconsidered en banc or explicitly rejected by the Supreme Court. *Skoros v. City of New York*, 437 F.3d 1, 17 n.13 (2d Cir. 2006).  The parties do not dispute that only the first two tests—those relating to the purpose and effect of the statute—are applicable here. *See* Defs.' Supp. 25-26; Pls.' Opp. 9-12. The purpose test is expanded upon by the objective observer standard, which asks how the government's purpose would be perceived by an objective observer. *Skoros*, 437 F.3d at 22 (citing *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984)).

The Supreme Court has repeatedly assumed the motto's secular purpose and effect, and all circuit courts that have considered this issue—namely the Ninth, Fifth, Tenth, and D.C. Circuit— have found no constitutional violation in the motto's inclusion on currency. While Plaintiffs urge that this court should disregard Supreme Court dicta, the Second Circuit counsels otherwise. *See United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975) (Supreme Court dicta "must be given considerable weight and [cannot] be ignored in the resolution of the close question we have to decide."); *see also United States v. Colasuonno*, 697 F.3d 164, 178-79 (2d Cir. 2012) (acknowledging that it is the "usual obligation to accord great deference to Supreme Court dicta" except in certain circumstances, such as when Congress has "removed or weakened the conceptual underpinnings" of a decision).

---

[2] The Court does not address the argument that associational plaintiff FFRF is collaterally estopped from bringing this action because Plaintiffs do not dispute this in their opposition brief, Pls.' Opp. 1-2, and Defendants only assert this defense against FFRF as an association, not against its members. Defs.' Reply Mem., 13-14.

In *Lynch v. Donnelly*, the Supreme Court held that a city's Christmas display of a crèche passed the purpose and effect *Lemon* tests by comparing the crèche to the motto on the U.S. currency. 465 U.S. at 676 (in discussing permissible religious references, notes that "[o]ther examples of reference to our religious heritage are found in the statutorily prescribed national motto 'In God We Trust,' which Congress and the President mandated for our currency . . . .") (citations omitted).  The concurring and the dissenting justices in *Lynch* shared the majority's view that the motto's place on currency was constitutionally sound. *See* 465 U.S. at 693 (O'Conner, J., concurring) (opining that the crèche, like the motto on coins, "served a secular purpose" because "government acknowledgments of religion serve, in the only ways reasonably possible in our culture, the legitimate secular purposes of solemnizing public occasions, expressing confidence in the future, and encouraging the recognition of what is worthy of appreciation in society"); *id.* at 716-17 (Brennan, Marshall, Blackmun & Stevens, JJ., dissenting) ("[S]uch practices as the designation of 'In God We Trust' as our national motto . . . can best be understood, in Dean Rostow's apt phrase, as a form a 'ceremonial deism,' protected from Establishment Clause scrutiny chiefly because they have lost through rote repetition any significant religious content . . . [and] are uniquely suited to serve such wholly secular purposes as solemnizing public occasions . . . .").

The following year, when the Supreme Court held that a crèche display in a different setting was unconstitutional, the majority declined to revisit the discussions of "ceremonial deism" from *Lynch*, because of "an obvious distinction between crèche displays and references to God in the motto" distinguishing "a specifically Christian symbol, like a crèche" from "more general religious references," which are constitutionally permissible. *County of Allegheny v. ACLU*, 492 U.S. 573, 603 (1989).   More recent Supreme Court decisions have affirmed this analysis. *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 699 (2005) (Breyer, J., concurring) (discussing "the Establishment Clause's tolerance . . . [of] public references to God on coins"); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 37 (2004) (O'Connor, J., concurring) ("'[C]eremonial deism' most clearly encompasses such things as the national motto ('In God We Trust')," whose "history, character, and context prevent them from being constitutional violations at all.").

Each circuit court that has considered the issue found no Establishment Clause violation in the motto's placement on currency, finding ceremonial or secular purposes and no religious effect or endorsement. In *Aronow v. United States*, decided before *Lemon* but affirmed well after, the Ninth Circuit held that the motto on currency did not violate the Establishment Clause because "[i]ts use is of a patriotic or ceremonial character and bears no true resemblance to a governmental sponsorship of a religious exercise." 432 F.2d 242, 243 (9th Cir. 1970) (citing dicta in *Engel v. Vitale*, 370 U.S. 421 (1962)); *see also Newdow v. Lefevre,* 598 F.3d 638, 644 (9th Cir. 2010) (declining to overrule *Aronow*).  The Fifth Circuit similarly affirmed a district court's decision on this issue, which held that the placement of the motto on the currency survived *Lemon* because "it served a secular ceremonial purpose in the obviously secular function of providing a medium of exchange" and "it is equally clear that the use of the motto on the currency or otherwise does not have a Primary effect of advancing religion." *O'Hair v. Blumenthal*, 462 F. Supp. 19, 20 (W.D. Tex. 1978), *aff'd sub nom. O'Hair v. Murray*, 588 F.2d 1144 (5th Cir. 1979) (per curiam).  The Tenth Circuit reached the same result in *Gaylor v. United States*, 74 F.3d 214, 216 (10th Cir. 1996), and more recently, the D.C. Circuit came out the same way, *Kidd v. Obama*, 387 F. App'x 2 (D.C. Cir. 2010) (per curiam). In both cases, the court relied on language from the Supreme Court and other circuits.

Plaintiffs urge this court to disregard those decisions, but neither those decisions nor the history and context of the motto's placement on currency can be ignored.  To do so would be to disregard the dicta from the Supreme Court, which this Circuit has instructed me to follow,  and as well the reasoning in *Lemon* and its progeny. Taken together, they support only one conclusion: the inclusion of the motto on U.S. currency satisfies the purpose and effect tests enunciated in *Lemon,* and does not violate the Establishment Clause.[3]

### B. Free Exercise Clause and RFRA

The Free Exercise Clause encompasses both "freedom to believe and freedom to act on one's beliefs." *Skoros*, 437 F.3d at 39 (internal quotations and citations omitted).  Absent some

---

[3] Indeed, there appears to be only one exception to the unanimity of federal courts in accepting the motto as constitutional. *See Engel v. Vitale*, 370 U.S. 421, 437 & n.1 (1962) (Douglas, J., concurring) (considering the appearance of the motto on currency in a list of activities that constituted "financ[ing] [of] religious exercise," which was "an unconstitutional undertaking whatever form it takes.")

5

demonstration that "the purpose of the defendants' challenged actions was to impugn . . . or to restrict their religion practices . . . a Free Exercise claim will be sustained only if the 'government has placed a substantial burden on the observation of a central religious belief,' without 'a compelling governmental interest justif[ying] the burden.'" *Id*. (quoting *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 384–85 (1990)).

Similarly, RFRA provides that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it demonstrates that such practice "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1.  The Second Circuit instructs that "substantial burden is a term of art in the Supreme Court's free exercise jurisprudence" and it "exists when an individual is required to 'choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

Plaintiffs argue creatively, albeit not for the first time, that the Free Exercise Clause is violated because they are forced to "[b]ear a religious message they believe to be untrue and completely contrary to their sincerely held religious belief" or "utilize a relatively burdensome alternative method." (Am. Compl. ¶ 485.) Plaintiffs also allege a violation of RFRA because the motto's placement on currency has forced them to "bear a religious message," "proselytize," and "further anti-Atheist religious prejudices." (*Id*. ¶ 491-93.)

Here again, as with the arguments presented with respect to the Establishment Clause, Plaintiffs' claims are not violative of constitutional guarantees and they fail to demonstrate the "substantial burden" required by the Free Exercise Clause and RFRA. Put another way, there is no showing of government coercion, penalty, or denial of benefits linked to the use of currency or the endorsement of the motto. *See Newdow v. Cong. of U.S. of Am.,* 435 F. Supp. 2d 1066, 1077 (E.D. Cal. 2006), *aff'd sub nom. Newdow v. Lefevre*, 598 F.3d 638 (9th Cir. 2010). Indeed, the case that Plaintiffs highlighted at  oral argument appears to cut against their argument. *See* 08/06/2013 Transcript of Oral Argument on Motion to Dismiss at 40-41. In that case, *Wooley v.*

*Maynard*, the Supreme Court held that requiring individuals to use license plates bearing the state motto "Live Free or Die" was unconstitutional. 430 U.S. 705 (1977). However, the Court specifically distinguished currency, not surprisingly finding that "currency, which is passed from hand to hand, differs in significant respects from an automobile . . . . Currency is generally carried in a purse or pocket and need not be displayed to the public. The bearer of currency is thus not required to publicly advertise the national motto." *Id.* at 717 n.15.

While Plaintiffs may be inconvenienced or offended by the appearance of the motto on currency, these burdens are a far cry from the coercion, penalty, or denial of benefits required under the "substantial burden" standard. As such, the inclusion of the motto on currency does not present a violation to the Free Exercise Clause or RFRA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs have not stated a claim under the Establishment Clause, the Free Exercise Clause, or RFRA, and Defendants' motion to dismiss is GRANTED.

The Clerk of the Court is instructed to close this case and remove it from my docket.

**SO ORDERED.**

**September 9, 2013**

**New York, New York**

_____
Hon. Harold Baer, Jr.
U.S.D.J.